FLORENCE B. SCHWAMAN, Appellant, *v.* EDGAR I. TRUAX
et al., Respondents, Impleaded with Others.

EQUITY — ACTION TO SET ASIDE SALE AND FINAL JUDGMENT IN PAR-
TITION.   A court of equity has jurisdiction of an action brought by plain-
tiff against her uncle and only sister to set aside a sale in an action of par-
tition brought by her against the same defendants, the order confirming
the sale and the final judgment in the action, and has power to order a
resale of the property under the direction of the court, the property hav-
ing been bid in for less than its actual value by the defendant sister act-
ing for herself and uncle, and no rights of third parties having intervened,
where it has been established in an independent action between the same par-
ties that by means of fraudulent acts and misrepresentations the defend-
ants had deprived plaintiff of her distributive share of her deceased
mother's personal estate by means of transfers from her before her
death procured by fraud, and that by reason thereof plaintiff was unable
to bid a sufficient amount for the real estate, in consequence of which
it was sold to the defendant sister for less· than its actual value;
and she is not precluded from maintaining the action at bar by the
fact that she had herself instituted the action of partition beforé she
brought the action to set aside the fraudulent transfers of her mother's
personal estate and that the courts refused to stay the action of partition
until the later action was determined, where it appears that at the time
plaintiff commenced the action for partition she was ignorant of the
existence of a will made by the mother giving her estate in equal shares
to herself and sister and was also ignorant of the wrongful transfers of
personal property that were thereafter set aside by the court, and had
commenced the action of partition to ascertain what, if any, rights she
had in the real estate owned by her uncle and her deceased mother as
tenants in common, the facts having been concealed from plaintiff by the
fraudulent acts and misrepresentations of the defendants.

*Schwaman* v. *Truax,* 76 App. Div. 194, reversed.

(Argued May 3, 1904; decided June 14, 1904.)

APPEAL from a judgment entered November 14, 1902,
upon an order of the Appellate Division of the Supreme
Court in the third judicial department, which affirmed an
interlocutory judgment of Special Term sustaining a demurrer
to the complaint.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Judson S. Landon, Robert J. Landon* and *John F. Clute* for appellant. Defendants Edgar and Bertha having forced on the sale at a time when they withheld from plaintiff her $30,000, and thus disabled her to bid enough on the property to protect her interest in it, cannot urge to her prejudice her failure to obtain a postponement. (*Stillwell v. Carpenter,* 2 Abb. [N. C.] 238.) Plaintiff was entitled to an injunction restraining Edgar and Bertha from selling the real estate, pending the decision of the Court of Appeals upon their appeal from the judgment for $31,618.79 and, if that judgment should be affirmed, to a resale and an accounting. And her complaint set up facts establishing a cause of action warranting such relief. (*Coatsworth v. L. V. R. R. Co.,* 156 N. Y. 457; *Ahrens v. Jones,* 169 N. Y. 559; *Bell v. Merrifield,* 109 N. Y. 202.) The court has power to entertain this action. (*Marvin v. Marvin,* 52 How. Pr. 97; *Furman v. Furman,* 153 N. Y. 314; *Matter of City of Buffalo,* 78 N. Y. 362; *McCall v. McCall,* 54 N. Y. 541; *Mattern v. Sage,* 15 Daly, 38; *Jex v. Jacob,* 9 Daly, 297; *Smith v. Nelson,* 62 N. Y. 288; *Stevens v. C. N. Bank,* 144 N. Y. 62; *Matter of Price,* 67 N. Y. 231; *Tripp v. Vincent,* 8 Paige, 176; *Nash v. Wetmore,* 33 Barb. 155; *Morse v. Hovey,* 1 Barb. Ch. 404.)

*A. J. Dillingham* for respondents. This court, sitting as a court of equity, has no jurisdiction to set aside the sale of a court of co-ordinate jurisdiction. (Code Civ. Pro. §§ 1282, 1283; *Mayor, etc., v. Brady,* 115 N. Y. 599.) The relief demanded is extraordinary and abnormal in its character, and violates the general rules relating to the determination of legal propositions. (Pom. Eq. Juris. 1361; *Stillwell v. Carpenter,* 59 N. Y. 423; *Ross v. Wood,* 70 N. Y. 810.)

BARTLETT, J. The defendants demurred to the complaint on the grounds that the court had no jurisdiction of the subject of the action and that the complaint does not state facts sufficient to constitute a cause of action.

The complaint, the allegations of which must be taken as true for the purposes of this appeal, states in detail a scheme of the defendants to defraud the plaintiff, which is to be regarded in all of its ramifications as one transaction. The fact that independent litigations are to a greater or less extent brought under collateral review is to be considered in the light of this scheme.

This action is brought by a sister against her uncle and an only sister, all residents of the city of Schenectady, in which the plaintiff seeks to set aside a sale in a partition action hereinafter referred to, the order confirming the same and the final judgment; also, that a resale of the property be had under the direction of the court, and for other relief that need not now be referred to in detail.

Isaac I. Truax died in the year 1887, leaving two children, the defendant Edgar, and his sister, Jane E. Lansing, since deceased. The plaintiff Florence, and the defendant Bertha, are the surviving children of Jane E. Lansing. Isaac I. Truax left a considerable amount of real and personal property, devising and bequeathing the same to his children, Edgar and Jane, in equal shares. Jane E. Lansing died in 1893, and after her death Edgar, Florence and Bertha continued to live together until Bertha's marriage in 1896, after which Edgar and Florence lived together until sometime in 1897, when Florence left the old homestead to live elsewhere; she afterwards married one Schwaman.

It appears that Jane E. Lansing left a last will and testament, giving her estate in equal shares to her daughters, Bertha and Florence. This will was suppressed by the defendants, and it did not come to the knowledge of the plaintiff until four years after testatrix's death in October, 1897, as will presently appear. From the time of her mother's death in 1893, the plaintiff was unable to ascertain what had become of her mother's personal estate, her uncle, Edgar, saying there was nothing for her, nor was she able to learn of the disposition that had been made of her mother's one-half interest in the real estate, as Edgar, who continued to manage it, as well

as the personal property, was very parsimonious and miserly in his treatment of the plaintiff.

The relations between the plaintiff and her uncle became so strained and unbearable that finally in 1897 she left the old homestead without having been able to ascertain what had become of her mother's property, real or personal, Edgar being in control thereof and fully able to give her information in regard thereto.

After leaving home, and in July, 1897, the plaintiff began an action of partition, under the advice of counsel that it was possible the plaintiff's mother had in some manner placed one-half of the property in trust for her benefit, although she was not receiving any income from the personal estate, nor her full share of the income from the real estate, assuming that her mother had divided her property equally between her children, and that if such a trust existed the partition suit would develop that fact, and plaintiff would learn something of what had become of her mother's property.

After the commencement of the partition suit plaintiff learned of the execution by her mother of certain transfers of personal property, one made in June, 1890, and another in October, 1893, about a week before her death, to the defendant Bertha, and of a power of attorney executed by Bertha to her uncle, the defendant Edgar, and other facts in relation thereto, which led the plaintiff to believe that Edgar and Bertha had defrauded her mother of her personal estate and the plaintiff of a half interest therein.

On acquiring this information plaintiff made an application to the surrogate on the 16th of October, 1897, for the appointment of an administrator of her mother's estate, setting forth in her petition, among other things in detail, the facts which had recently come to her knowledge. Two days later the defendant Edgar filed a petition for the probate of the will of plaintiff's mother, which had been written by him and remained in his possession since the death of the testatrix four years before. This was the first knowledge that plaintiff had of the existence of this will, which named Edgar and

Bertha as executors and devised and bequeathed in equal shares the property of the testatrix to the plaintiff and the defendant Bertha.

The plaintiff opposed the granting of letters testamentary to Edgar and Bertha on the ground that the chief need of an executor or administrator was to bring suit against Edgar and Bertha to recover the testatrix's personal estate unlawfully obtained and held by them, and that they were dishonest in seeking letters, the only purpose of which would be to thwart and delay plaintiff in obtaining her share of her mother's estate. The surrogate held that charges of fraud were no proof of fraud and issued the letters, the decree of probate being made November 29th, 1897, and plaintiff appealed from so much thereof as awarded letters testamentary to Edgar and Bertha. In the meantime issue had been joined in the partition suit, and in November, 1897, a referee was appointed to take the proof of title and state the accounts.

Pending the appeal from the surrogate's decree the proceedings before the referee in the partition action were suspended by consent. The Appellate Division affirmed the surrogate's decree and denied a motion for leave to go to the Court of Appeals, the order being made May 10th, 1898. Thereafter, and on June 25th, 1898, an interlocutory judgment was entered in the partition action settling the accounts of Edgar and ordering a sale of the property, etc.

The plaintiff believing that she had been defrauded of her share of her mother's personal estate, and having no other property than her one-fourth share in the real estate decreed to be sold, commenced an action on the 29th of July, 1898, to vacate and set aside the transfers of personal property made by her mother to Bertha in June, 1890, and in October, 1893, the latter only a week before her mother's death, and the power of attorney executed by Bertha to Edgar, whereby she was wrongfully deprived of her interest in her mother's personal estate.

On the same day that this action was commenced the plaintiff made a motion in the partition suit to have the sale of the

real estate therein postponed, plaintiff in her moving papers showing that she had commenced the action to vacate said transfers and for an accounting. The motion was denied. The plaintiff appealed from the order, which was dated August 6th, 1898, and moved for a stay pending the appeal, which was denied September 10th, 1898. The sale in partition took place September 15th, 1898. The first Trial Term after plaintiff began action to recover the personal property was not held until the following November and then came up on demurrer.

In this connection the plaintiff alleges in the complaint now before us (paragraph 6th) as follows: "That having been defrauded of her personal property by Edgar and Bertha, who then had possession thereof, plaintiff was unable to protect her interest in said real estate at the sale thereof September 15th, 1898, and the whole thereof was struck down to said Bertha for $31,200, said Bertha and Edgar having agreed, as plaintiff believes, to purchase the same in the name of said Bertha; that the said parcel of said real estate, known as the State Street Stores, was struck down to said Bertha for $20,250, this plaintiff being unable to bid higher than $20,000 therefor, being unable to take care of a higher bid because of said defendants Edgar and Bertha having wrongfully obtained her share of her mother's estate, the possession of which by plaintiff would have enabled her to bid much more for said parcel, plaintiff at the time being willing to bid $25,000 for said parcel, and believing the same to be worth $30,000, having often heard her grandfather, said Isaac, state that it paid a fair return on an investment of that amount, but plaintiff was unable to bid $25,000, or to protect her interest, her inability being due to the unlawful acts of said Edgar and Bertha in respect to Jane's property as aforesaid, and the said Edgar and Bertha, the said Bertha being the beneficiary of such inability on plaintiff's part so occasioned by them, the plaintiff through her attorney made bids on both parcels of said real estate, but was so hampered and distressed for want of the funds so wrongfully withheld by said

Edgar and Bertha that said property was all bought in by said Bertha."

The sale of the property was confirmed by the court on October 8th, 1898, and final judgment obtained in the partition suit.  The plaintiff moved for a stay pending the trial of her action to set aside the transfers of personal property, which was denied.

In March, 1899, the issues in the action to set aside the transfers of personal property were brought to trial and judgment rendered in favor of the plaintiff.  On appeal the Appellate Division affirmed the judgment of the trial court and judgment was entered in favor of plaintiff and against Edgar and Bertha for $31,618.79 on February 26th, 1901. An appeal was taken to this court which resulted in an affirmance of the judgment in plaintiff's favor by decision handed down December 2d, 1902, without opinion.   (172 N. Y. 658.)

It will throw light on this case to quote from the grounds of the decision of the learned judge who decided the case at Special Term.   He stated in part as follows: "Jane's will gave her property to the plaintiff and to defendant Bertha in equal shares; it was duly proved about November 29th 1897, and Edgar and Bertha, who were named as executors, duly qualified.   They then claimed that the instruments of June 30th, 1890, and October 3rd and 4th, 1893, transferred to Bertha all her mother's personal estate and refused the plaintiff any share therein, whereas the plaintiff is entitled to one-half her mother's personal estate after payment of her debts, funeral and testamentary expenses, but has been unable to procure any recognition of her rights, Bertha being willing to permit her to share therein, but, being under the influence of Edgar, who has held her power of attorney, executed October 4th, 1893, to manage and control the property as if it were his own, she felt unable to do so. ~ Since the time prior to his father's death, Edgar had a great antipathy to the plaintiff, which grew into hatred of her before her mother's death, and his desire to injure the plaintiff led him to set up as operative the instruments of transfer, in violation of Jane's confidence

in him and her understanding that they were inoperative. The instruments of transfer should, therefore, be set aside so as to permit the plaintiff to recover her distributive share in her mother's estate as if they had not been executed."

The plaintiff further alleges, in substance, in her complaint in the case at bar that the title to said real estate remains in Bertha and that no rights of third parties have intervened; that by reason of these wrongful acts of Edgar and Bertha, she has been greatly injured notwithstanding the fact that she has shown due diligence in invoking her legal remedies.

It appears by the admitted facts that the plaintiff has been the victim of wrongful and fraudulent acts on the part of these defendants which have occasioned her great financial loss.

There are two phases of this case of great importance that should be constantly kept in mind. The first is that when plaintiff began her action of partition she was groping in the dark and was entirely ignorant of the existence of her mother's will, or the wrongful transfers of personal property that have since been set aside by the court. The second is that when plaintiff opposed the granting of letters testamentary on the probate of her mother's will to Edgar and Bertha, she stood before the surrogate making charges of fraud that had not then been proved. This is equally true in regard to her motion to postpone the sale in partition. She there stood upon allegations of fraudulent or improper conduct that were yet to be submitted to the scrutiny of the court. Since then the plaintiff has made good her charges and final judgment entered in her favor on the decision of this court.

The scheme of these defendants, if treated as one transaction, without regard to certain technical points urged by the respondents, removes many apparent legal difficulties from the case.

It is argued that the plaintiff, having begun her partition suit, must abide by the consequences thereof, and that it is unreasonable for her to ask the court to set aside the final judgment in that action and permit a resale.

The answer is that she brought the partition action to ascertain, if possible, what rights she had in her mother's estate, she being ignorant of the existence of the will and of the fraudulent transfers of personal property. In addition, her uncle, Edgar, assured her that she had no interest in the personal property. When the plaintiff ascertained facts which led her to believe that she had been wronged as to the personal property, she sought to obtain the appointment of an administrator of her mother's estate, but was met by the production of the will, which had been withheld from probate for four years. · When plaintiff sought to prevent the issuing of letters testamentary to the defendants, who were hostile to her, she was met by the not unreasonable suggestion that charges of fraud were not proof of fraud and the letters issued.

In view of the information she had already secured as to the wrongful transfers of personal property and the additional light that came to her by the production of her mother's will, she brought her action attacking these transfers, and moved the very same day to stay the sale in partition.

The plaintiff appears to have fought for her rights under adverse circumstances, step by step, with diligence, until she is now able to point to the judgment of this court setting aside the transfers of personal property to Bertha, thereby giving full force and effect to her mother's will, which gives plaintiff one-half of the personal property.

These defendants cannot now be heard to say to the plaintiff, it is your own deliberate act which has secured the sale in partition, and the litigation over the personal property is entirely distinct and cannot be legally referred to as a reason for vacating the sale.

It was but scant justice the plaintiff received at Special Term, when asking a postponement of the sale, to be informed that she occupied the attitude of praying the court that the progress of the suit should be indefinitely stayed until she became rich enough to attend the sale as a well-equipped bidder. The real situation was that the fraudulent conduct of these

defendants deprived her for the time being of that portion of
her mother's estate to which she was justly entitled, and that
would have enabled her to attend the sale in a position on equal
footing with Bertha and protect her rights in the real estate.
Justice can only be worked out in this case, as stated at the
outset, by treating the entire scheme of the defendants as
one transaction and the various litigations and the positions
assumed by the parties herein as a part thereof.

The learned Appellate Division, while deciding adversely
to this plaintiff, cited the case of *Stilwell* v. *Carpenter* (59
N. Y. 423). That is a decision which bears directly upon
this case. Judge ANDREWS said (p. 423): " But it is an ancient
and established jurisdiction of courts of equity to restrain
proceedings upon judgments at law, obtained by fraud and
contrary to justice, and the authority exercised by the court
in this case, in setting aside the surrogate's decree, is to be
tested by the principles which control courts of equity in exer-
cising this essential or carefully guarded jurisdiction. In the
case of *Marine Insurance Co.* v. *Hodgson* (7 Cranch, 332),
MARSHALL, Ch. J., says that any fact which clearly proves it
to be against conscience to execute a judgment and of which
the injured party could not have availed himself in a court of
law, or of which he might have availed himself at law, but
was prevented by fraud or accident unmixed with any fault
or negligence in himself or his agents, will justify an applica-
tion to the Court of Chancery.  *   *   *   It is not sufficient
to authorize the interference of the court that it is shown
that the claim upon which the judgment was obtained was
unfounded, or that there was a good defense to the action, or
that the court erroneously decided the law, or that the defend-
ant omitted to avail himself of his defense, if before the judg-
ment was rendered the facts were known or might, by the
exercise of reasonable diligence, have been ascertained by
him. It is the duty of a defendant to make his defense, if
he has any, when he is sued, and if he omits to do it he is in
general concluded by the judgment."

It is true that in the case above cited the court found, under

its peculiar facts, that the plaintiff was not entitled to the relief claimed, but in the case before us the general principles contained in the above quotation apply with great force. The plaintiff did everything in her power to procure a stay of the sale in partition, and after the denial of her application at Special Term and on appeal she was not justified in attacking the sale which had taken place, notwithstanding her objection, until she had established in an independent action allegations of fraud which would justify the interference of a court of equity leading to the vacating of the sale and judgment in partition and the ordering of a resale.

As to the point raised that the Supreme Court in this action is without jurisdiction to entertain it, the case cited seems to be a complete answer. It shows conclusively that it would not be unseemly for a court of equity to interfere with the final judgment of the court in the partition action which has resulted in a sale of the real estate in question.

This position of no jurisdiction is answered by the same line of argument that leads to the conclusion that the complaint herein states facts sufficient to constitute a cause of action.

In view of the facts admitted in this case by the demurrer, it is clear that a court of equity has ample power to order a resale of these premises by reason of the wrongful acts of the defendants.

The claim that the plaintiff has been guilty of laches has no foundation under the disclosures of this record showing gross fraud, and the fact that the rights of third parties have not intervened. No title is involved that will not be swept aside by a court of equity.

The judgments and orders appealed from should be reversed, with costs in all courts, and the demurrer overruled, with costs, with leave to defendants to answer, on payment of costs in all courts, within twenty days after service of a copy of the order of reversal.

Parker, Ch. J., Martin and Vann, JJ., concur; Gray, O'Brien and Cullen, JJ., dissent.

Judgments and orders reversed, etc.