J. B. JOHNSTON ET AL. V. W. H. STEPHENS ET AL.

No. 5049. Decided April 21, 1932.
(49 S. W., 2d Series, 431.)

*Lasseter & Simpson,* of Tyler, for plaintiffs in error.

The court erred in sustaining the general exception and demurrer filed herein by the defendants to plaintiffs' petition for the reason that said petition did in fact state a cause of action which would support a judgment in favor of plaintiffs and against defendants as prayed for in the petition.

The court erred in sustaining defendants' general demurrer for the reason that plaintiffs' petition on its face stated a good cause of action. Article 5540, R. S., 1925; Ogg v. Ogg, 165 S. W., 912; S. W. Portland Cement Co. v. Latta Happer, 193 S. W., 1115; Gathright v. Wheat, 70 Texas, 740, 9 S. W., 76.

"Any suit brought directly to set aside the deed on the ground of fraud is a direct attack." Simkins Administration of Estate, 2d Ed., p. 399; Crawford v. McDonald, 88 Texas, 630, 33 S. W., 325.

"It has often been asserted in this State that the district courts in the exercise of their equitable powers may grant by re-examination the case on its merits, such relief, as equity and justice may demand when it is made to appear that a judgment has been obtained by fraud, mistake or accident without any want of diligence on the part of the person against whom rendered." McMurray v. McMurray, 67 Texas, 665, 4 S. W., 357; Reeves v. Fuqua, 277 S. W., 418 (writ of error dismissed); Key v. Key, 167 S. W., 173; Wilmarth v. Reagan, 242 S. W., 728; Murchison v. White, 54 Texas, 78; McCampbell v. Durst, 11 S. W., 380.

*George W. Gibson, Smithdeal, Shook, Spencer & Bowyer,* all of Dallas, for defendants in error.

The instant suit, having been brought in the district court to set aside the judgment of partition, apparently regular on its face, entered in the probate court, and to partition the land, was a collateral attack on such probate judgment and could not be maintained, and the general demurrer was properly sustained, and it was proper to sustain the special exception directly pointing out the fact that the petition constituted a collateral attack on the probate partition judgment. Dunn v. Taylor, 94 S. W., 347; Eatwell v. Roessler, 82 S. W., 796; Oetting v. Mineral Wells Crushed Stone Co., 262 S. W., 94; Parker v. Moody, 96 S. W., 650; Owens v. Foley, 93 S. W., 1003; Wheeler v. Powell, 114 S. W., 689; Smith v. Perkins, 16 S. W., 805; Brooks v. Powell, 29 S. W., 809; W. C. Belcher Land Mort. Co. v. Bush, 67 S. W., 444; Davis v. Ragland, 93 S. W., 1099;

In re Rochester, etc., 222 Fed., 26; Ross v. Brouilhet, 80 S. W., 241; Miller v. Koertge, 7 S. W., 691; Arthur v. Reed, 64 S. W., 831.

The petition in the instant case showing on its face that the probate court had taken jurisdiction of the property and had partitioned the same, and such petition failing to show that the administration of the estate had been closed in the probate court, failed to show that the district court had jurisdiction on account of the exclusive jurisdiction given to the probate court,—hence the general demurrer was properly sustained. Branch v. Hanrick, 8 S. W., 539; Wilkinson v. McCart, 116 S. W., 400; Watkins v. Sansom, 54 S. W., 1096; Wallace v. Dubose, 242 S. W., 351.

Conceding that the suit was a direct attack on the judgment of the probate court, the petition was insufficient even for that purpose, because it failed to allege any excuse for the plaintiffs' failure to present objections to the entry of the partition decree, or for their failure to act within a reasonable time in an effort to have the judgment of the probate court set aside. Bergstrom v. Kiel, 67 S. W., 781; Alexander v. San Antonio Lbr. Co., 13 S. W., 1025; East Texas L. & Imp. Co. v. Graham, 60 S. W., 472; Hare v. Marshall, 226 S. W., 482; DeCamp v. Bates, 37 S. W., 644; Ballew v. Wichita Co., 74 Texas, 343; Rowlett v. Williamson, 44 S. W., 624; Walet v. Haskins, 4 S. W., 596; Ferguson v. Sanders, 176 S. W., 782; Patrucio v. Selkirk, 160 S. W., 635; Republic Supply Co. v. Weaver, 235 S. W., 684.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This suit was filed by J. B. Johnston and others, the children of one Willie Stephens, deceased, against W. H. Stephens, his wife Annie S. J. Stephens, and their son W. C. J. Stephens. The general demurrer to the petition was sustained by the district court, and the judgment affirmed by the Court of Civil Appeals. (300 S. W., 225).

The judgment of the trial court recites that special exceptions as well as the general demurrer to the petition were sustained, but the answer of the defendants in error found in the transcript presents only a general demurrer and general denial, followed by certain special pleas. The special exceptions, if any there were, are not before us. As the case is presented in this court, the sole question is whether or not the general demurrer should have been sustained.

The facts as stated in the petition may be summarized as follows:

On the 6th of June, 1899, one Annie S. Johnston executed a will, under the terms of which she disposed of the whole of her property. The property consisted of her residence, then occupied by her, together with two acres of land and a former residence, four tracts of land, one of 130 acres, one of 100 acres, one of twenty-five acres, and an undivided interest in a tract of some eighty-seven acres,—all out of the Jordan League in Cherokee County. Annie S. Johnston, the testatrix, died a feme sole on or about September 22, 1901. The executor named in the will declined to act, and the defendant in error W. H. Stephens in April, 1902, applied to the probate court of Cherokee county for letters of administration with the will annexed. The will was admitted to probate in May, 1902, and W. H. Stephens was appointed administrator with the will annexed, and qualified as such. By the terms of the will Annie S. J. Stephen, the wife of W. H. Stephens, the administrator, was devised the home in which the testatrix resided in the town of Mt. Selman, consisting of a house and two acres of land. The following bequest was made to Margaret Johnston:

"I give to my niece, Margaret Johnston, daughter of my brother, Gabrial C. Johnston, my former residence and 100 acres of land adjoining it for her lifetime. I wish my niece, Annie S. J. Stephens and Col. William G. Horseley of Greenville to manage it for her, during her lifetime, and at her death for it to go to her brother, Willie, or to one or more of his children, whichever she prefers leaving it to."

The remainder of her estate was bequeathed to the Protestant Episcopal Church of Honey Grove, Texas, Bishop Garret having control of it.

The petition alleges that W. H. Stephens, purporting to act as administrator of the estate with the will annexed, caused certain persons to be named as partitioners of the estate, and had the same partitioned. On the 18th day of January, 1905, the partitioners made a report to the probate court, in which they partitioned the property among the legatees. It appears also from the plaintiff's petition that Annie S. J. Stephens was also allotted the undivided interest in the eighty-seven and seven-tenths acres of land heretofore referred to, but the authority and reason therefor are not apparent in the petition. A copy of the will is attached to the petition, and it appears therefrom that Mrs. Stephens was only to be given the home at Mt. Selman and two acres of land, and that all the estate

of Annie S. Johnston, except that given her, the two acres re-
ferred to and the home, and the home and 100 acres devised
for life to Margaret Johnston, was to go to the Protestant
Episcopal Church. At any rate, according to the petition Mrs.
Stephens not only had set apart to her the property willed to
her at Mt. Selman, but an undivided interest in the eighty-
seven and seven-tenths acres in addition. The property awarded
her by the petitioners is described in the petition before us by
metes and bounds. The partitioners also allotted to Margaret
Johnston, the life devisee under the will, certain property situ-
ated on the waters of the Neches river, about four miles south-
west from the town of Bullard, which is described by field
notes in their report. The property allotted to the Protestant
Episcopal Church, or to Bishop Garret for the church, is also
described by field notes.

The plaintiffs' petition, after setting forth the facts but
briefly referred to by us, but failed to call attention to the un-
divided interest in the eighty-seven and seven-tenths acres
awarded Mrs. Stephens, above mentioned, contains the follow-
ing allegations:

"Your plaintiffs further allege upon information and belief
that prior to the time said estate was partitioned the said
W. H. Stephens had contracted to purchase from the Methodist
Protestant Episcopal Church, all its interest in said estate, and
did, soon after the partition, purchase same. That in making
said partition, the said Stephens fraudulently and with the
intent to render that part of the property set apart to plain-
tiffs and their ancestor worthless and (of) no value, caused
same to be partitioned in such a manner as that the said
church and the said defendant Annie S. J. Stephens, who is the
wife of the defendant W. H. Stephens, received practically all
the land that was of any value whatever. That part of said
land which was surveyed and set apart to plaintiffs' ancestors
was surveyed so that it would take in all of the roads, gulleys,
hills and waste land belonging to the estate of the said Annie
S. Johnston and practically all of the good land was set apart
to the said Church and to the said defendant Annie S. J.
Stephens, wife of the defendant; that said land was not par-
titioned in accordance with the provisions of said will in that
the 100 acres set apart to plaintiffs' ancestors was not the land
adjoining the former residence of the said Annie S. Johnston,
but was fraudulently divided and partitioned so that the said
Church and the wife of said defendant W. H. Stephens re-
ceived practically all of the land adjoining the former resi-

dence of the said Annie S. Johnston, and left for the ancestors of the plaintiffs and the plaintiffs herein, 100 acres which was of little value; that the land so set apart to plaintiffs' ancestors and to plaintiffs was so surveyed that it contained 12 different corners and angles and was surveyed so that it included all the poor land, roads, ditches and gulleys on the entire tracts held and owned by the said Annie S. Johnston at the time of her death; that the partitioners appointed by the court to partition said land had nothing whatever to do with the surveying and partitioning of said land, but that said survey and partition was made under the direction and at the instance of the defendant, W. H. Stephens, that he was on the ground with the surveyor at the time the survey was made and showed the surveyor where to run the lines so that said survey of the 100 acres so set apart to plaintiffs' ancestors and to plaintiffs would contain and include all of the worthless land owned by said estate by the said Annie S. Johnston. That as hereinbefore alleged, the said defendant, Stephens, as plaintiffs are informed and believe and therefore allege the facts to be, had, prior to the partition, agreed to purchase the land bequeathed to the said Church, and did, soon after said partition, become the owner and holder of same. That subsequent to the time the defendant W. H. Stephens acquired the land from the Methodist Protestant Episcopal Church, to-wit: on or about the 3rd day of June, A. D. 1922, the said defendant, W. H. Stephens, joined by his wife, the defendant Annie S. J. Stephens, conveyed all or a part of said Annie S. Johnston land to the defendant W. C. J. Stephens, who is now asserting some character of claim or right to said land. That the said defendant W. C. J. Stephens is the son of the defendants W. H. and Annie S. J. Stephens, and said land was conveyed to him without any consideration, but was given to him by his said father and mother. That the plaintiffs herein and the defendants, W. H. Stephens, Annie S. J. Stephens, and W. C. J. Stephens, now own all of the land set apart and bequeathed by the said Annie S. Johnston, deceased, to the beneficiaries in said will; that by reason of the illegal and fraudulent manner in which the said defendant, W. H. Stephens, caused the land set apart to plaintiffs and their ancestors to be surveyed, it rendered their land worthless and of no value, while the said two defendants herein and their vendors are now the owners and claiming all the good land that belongs to said estate. That the said 100 acres so bequeathed to the ancestors of plaintiffs herein was not the 100 acres including the former residence of the (said) Annie S.

Johnston, nor was it the 100 acres of land adjoining said residence which was bequeathed to them. That by reason of the said acts hereinbefore alleged, said judgment of partition and partition were illegal and fraudulent and void, and should be set aside and said land now partitioned in accordance with the last will and testament of the said Annie S. Johnston, deceased. That the said defendant W. H. Stephens in surveying and having said tracts of land surveyed for allotment caused the 100 acres set apart to the ancestors of plaintiffs to be so surveyed as to render it useless and valueless to any person, other than the owner of the surrounding land, and said land is of little value to any person other than said defendants. That said survey was fraudulently made by the said Stephens for the sole purpose of rendering said land valueless and forcing a sale of it to himself at his own price."

The petition also shows that the will provided that the 100 acres of land bequeathed to Margaret Johnston was so devised to her for her life only, with remainder "to her brother, Willie, or to one or more of his children," whichever Margaret, the life devisee, "prefers leaving it to." Margaret Johnston, however, died in 1922, without ever having designated her brother or any of his children as the remainderman. Her brother, Willie, named as a possible remainderman in the will, died in 1912, prior to the death of his sister, and left some seven children, one of whom died without issue, and the remaining six are the plaintiffs in this suit. They allege in the petition that they are now the owners and holders of the land involved in this controversy. The prayer of the petition reads as follows:

"Wherefore, premises considered, plaintiffs pray for process, according to law, and upon final trial that said decree of partition be set aside and held for naught and that said land be repartitioned in accordance with the terms of said will; that this court appoint commissioners to equitably and justly partition said land between the plaintiffs and defendants, for costs of suit and for such other and further relief, both general and special, as they may be entitled to receive, and in duty bound will ever pray."

We have already noted that a general demurrer was sustained to this petition, and the case is before us on the issue as to whether or not that demurrer was rightly sustained. In determining the question as to whether or not a cause of action was stated by this petition within the jurisdiction of the court, we must therefore assume that all the charges and allegations made in the petition are true. Key v. Key, 167 S. W., 173, 174;

Perez v. Lipscomb & Co., 267 S. W., 748. We must assume, for example, that the defendant in error W. H. Stephens *acted "fraudulently and with the intent to render that part of the property set apart to plaintiffs and their ancestors worthless and of no value" when it was partitioned.* We must assume, as charged in the petition, that said W. H. Stephens caused the property "to be partitioned in such a manner as that the said Church and the said defendant Annie S. J. Stephens, who is the wife of the defendant W. H. Stephens, received practically all the land that was of any value whatever." We must assume that it is true that the land which was surveyed and set apart to the plaintiffs' ancestors "was surveyed so that it would take in all of the roads, gulleys, hills, and waste land belonging to the estate of the said Annie S. Johnston, and practically all of the good land was set apart to said Church and to the said defendant Annie S. J. Stephens, wife of the defendant." We must likewise assume that it is true that the land *"was not partitioned in accordance with the provisions of said will, in that the 100 acres set apart to plaintiffs' ancestors was not the land adjoining the former residence of the said Annie S. Johnston, but was fraudulently divided and partitioned so that the said Church and the wife of said defendant W. H. Stephens received practically all of the land adjoining the former residence of the said Annie S. Johnston, and left for the ancestors of the plaintiffs and the plaintiffs herein 100 acres which was of little value."* We must also assume that the allegations made in the petition are true to the effect that the land set apart to the plaintiffs' ancestors and to the plaintiffs "was so conveyed that it contained twelve different corners and angles and was surveyed so that it included all the poor land, roads, ditches, and gulleys on the entire tracts held and owned by the said Annie S. Johnston at the time of her death." The petition charges, and for the purposes of this opinion we must assume, *"that the partitioners appointed by the court to partition said land had nothing whatever to do with the surveying and partitioning of said land, but that said survey and partition was made under the direction and at the instance of the defendant W. H. Stephens; that he was on the ground with the surveyor at the time the survey was made and showed the surveyor where to run the lines so that said survey of the 100 acres so set apart to plaintiffs' ancestors and to plaintiffs would contain and include all of the worthless land owned by said estate by the said Annie S. Johnston."* The petition also urges, and the truthfulness of those allegations we must likewise assume for

the purpose of this opinion, that the plaintiffs were informed and believed, and upon that information and belief alleged, that prior to the partition *the defendant W. H. Stephens,* *"agreed to purchase the land bequeathed to the said Church,* *and did soon after said partition become the owner and holder* *of the same."* The petition likewise states, and the truthfulness of this we must assume for the purposes of this opinion, *"that by reason of the illegal and fraudulent manner in which* *the said defendant W. H. Stephens caused the land set apart to* *plaintiffs and their ancestors to be surveyed, it rendered their* *land worthless and of no value, * * * that said survey was* *fraudulently made by the said Stephens for the sole purpose* *of rendering said land valueless and forcing a sale of it to* *himself at his own price."* (All italics ours). The petition, as is shown in the quotation made therefrom, alleges that W. C. J. Stephens is a son of W. H. Stephens and his co-defendant Annie S. J. Stephens, and that in 1922 his father and mother conveyed to him as a gift a certain portion of the land in controversy, and that the conveyance was without consideration. It is stated in the petition that W. H. Stephens, his wife, Annie S. J. Stephens, and their son, W. C. J. Stephens, now own all the land set apart and bequeathed by Annie S. Johnston, deceased, to the beneficiaries in said will.

■ We are of the opinion that the petition was good as against the general demurrer. It is true that prayer is made that the judgment of the probate court partitioning the estate be set aside and held for naught; but following that the prayer asks that the property, charged to be in the hands of either originally interested parties or one who paid no consideration therefor, be "repartitioned in accordance with the terms of said will."

■ If the facts charged by the petition should be established, in the absence of an appropriate defense, the defendants in error would hold the property as trustees for the beneficiaries under the will, and it would be "subject to repartition in accordance with the terms of said will." Having charged elements of fraud sufficient as against a general demurrer, and having made prayer, in part at least, for relief to which they were entitled, as well as "for such other and further relief, both general and special, as they may be entitled to receive," we cannot, in the absence of special exceptions, say that the petition is insufficient merely because it does not specifically allege that defendants in error under the facts hold the property as trustees, and that it is therefore subject to repartition. Nor do

we think the petition necessarily involves a collateral attack on the decrees and judgment of the probate court. It makes a direct attack on the title held, or purported to be held, by W. H. Stephens, his wife, and son. The attack is predicated upon allegations of extraneous fraud, which appears to be sufficient to have authorized a court of equity to decree that said parties hold the property involved in trust for the beneficiaries under the will, and to have authorized such a court to partition the property in accordance with the title actually taken by the beneficiaries at the time the will became effective as to them. Fisher v. Wood, 65 Texas, 199; McCampbell v. Durst, 73 Texas, 410, 40 S. W., 955; McCampbell v. Durst, 15 Texas Civ. App., 522, 40 S. W., 315; Storer v. Lane,. 1 Texas Civ. App., 250, 256, 20 S. W., 852; Lindsey v. State, 27 Texas Civ. App., 540, 66 S. W., 332, 334; Reeves v. Fuqua, 277 S. W., 418, 424; Freeman on Judgments (5th ed.), vol. 3, sec. 1184; Schwaman v. Truax, 179 N. Y., 35, 71 N. E., 464, 103 Am. St. Rep., 832.

In the case of Fisher v. Wood, cited above, the reporter states the facts, in so far as material here, as follows:

"The appellants, Elizabeth V. Fisher and Martha D. Jones, the latter joined by her husband, A. L. Jones, claiming as devisees under the will of L. A. Hill, deceased, instituted this suit in the district court of Waller County against R. C. Wood, executor of the will, and Mrs. R. J. Wood and one R. R. McDade, to set aside as fraudulent certain deeds to real estate made by R. C. Wood, as executor, to Mrs. R. J. Wood, and to declare a trust in favor of the plaintiffs in a portion of the land still held by her. No judgment was sought against McDade, who appeared to be an innocent purchaser for value.

"The amended original petition alleged that Mrs. L. A. Hill, by her will, duly probated in December, 1874, bequeathed her entire estate in equal portions to the plaintiffs, Elizabeth V. Fisher and Martha D. Jones, and the defendants, R. C. Wood, and Mrs. R. J. Wood, and nominated R. C. Wood as the executor of the will; that the estate consisted of $6,000 in money, other personal property of the value of $800 and upwards, and two certain tracts of land, aggregating four hundred and thirty-eight acres, situated in Waller county and fully described in exhibit appended to the petition; that the will provided that the real estate should not be sold, but should be divided amongst the devisees, share and share alike; that on December 29, 1874, the defendant R. C. Wood was duly appointed by the probate court of Waller county executor of the will, and qualified as such; that the land was well improved, was rea-

sonably worth the sum of $12,000, and was susceptible of an equitable division amongst the devisees in accordance with the provisions of the will, but that the executor, combining and confederating with his co-defendant, R. J. Wood, to cheat, wrong and defraud plaintiffs out of their interest in the real estate and to procure title thereto in himself and R. J. Wood, on May 12, 1875, procured, by fraudulent representations, from the probate court an order authorizing a private sale of the real estate for the purpose of partition, under which order the executor, on December 1, 1875, made a pretended sale and conveyance of the same to R. J. Wood at the price of $5,000, one-half cash and the balance on twelve months' credit, reciting in the deed the payment to him of $2,500 and the execution of Mrs. Wood's note for the remainder, and that the sale was afterwards duly confirmed by the probate court.

"The petition further alleges that the sale and conveyance, though nominally to Mrs. R. J. Wood only, were really made in trust for the executor and herself; that the cash payment of $2,500 was never in fact made, but that in lieu thereof Mrs. Wood, on March 17, 1876, reconveyed about one-half, or two hundred and sixty acres, of the land to the executor in his individual right; that on January 10, 1878, R. C. Wood again conveyed this tract of two hundred and thirty acres to Mrs. Wood, and she afterwards conveyed the same to the defendant McDade, who claimed to be an innocent purchaser for value without notice; that Mrs. Wood still retains the remainder of the land; * * *

"The plaintiffs conceding that McDade was a purchaser for value without notice, and alleging that the defendants, Mrs. Wood and the executor, are estopped to deny the validity of his title to the two hundred and thirty acres, seek to recover the remainder of the tract, the title of which is still in Mrs. Wood, and which is of less value than the two hundred and thirty acres conveyed to McDade, on the ground that the pretended sale to her by the executor was fraudulent, and that she holds the moiety in trust for the plaintiffs who have received no portion of the lands or its proceeds."

■ The plaintiffs in that case also pleaded that they did not know of the fraudulent acts of the executor until about three months before the institution of the suit, and that the executor and his bondsmen were insolvent. We do not believe, however, that the omission of these last named allegations from the petition in the instant case militates against its sufficiency on general demurrer, or makes inapplicable the principles of law de-

clared in the case. In that case on the facts shown, Judge Stayton, who was then Associate Justice, after adverting to the rule that the decrees of the probate court through which sales are made could not be set aside by an original proceeding in the district court, held that an action could be maintained in the district court to establish a fraudulent combination between the executor and his co-defendant to deprive the parties of their interest in the estate, for the purpose, if the property was still in their hands, of charging it with a trust, and to constitute them the trustees for those entitled to the estate. In part Judge Stayton said:

"The facts alleged in the petition and found to be true by the court below are sufficient to establish a fraudulent combination between the executor and his co-defendant to deprive the appellants of their interest in the estate of Mrs. Hill, such as, were the property still in their hands, to authorize a court of equity now to charge it with a trust in their hands and to constitute them trustees for those entitled to the estate. To do this it is not necessary to set aside the decrees of the probate court ordering and confirming the sale."

\* \* \* \* \* \*

"It does not follow, however, from this, that upon proper averments a court of equity, while it leaves the legal title standing as directed to be made under the orders of the probate court, will not affect the fraudulent purchaser with a trust and compel him to hold the property as a trustee for those entitled to it. That a court of equity has this power there can be no question, and it matters not whether the fraud which calls it into operation occurred in procuring orders in probate through which sales were directed to be made and confirmed, or in the sales, or in the making of deeds in violation of the order of confirmation.

"That a court of equity, when the rights of bona fide purchasers have not intervened, would have the power to cancel a conveyance made by an executor in violation of the order of a probate court confirming a sale of land, when necessary for the protection of devisees, heirs or creditors of an estate, we have no doubt; and this is so, notwithstanding a similar power may exist in the probate court. The record shows that the appellants are entitled to relief as against all the defendants, except the defendant McDade, who is shown to be an innocent purchaser of the legal title, while under the decrees of the probate court it appeared to be in his vendee."

■ In the case of McCampbell v. Durst, 73 Texas, 410, 40 S. W., 955, this Court, in an opinion by Judge Acker, held that a suit to cancel and annul a deed executed in pursuance of the proceedings of the probate court, which are alleged to have been fraudulent and void, was not a collateral attack on such probate proceedings, but a direct effort to vacate the deed, which could be done when fraud was perpetrated, although the probate orders stand. In part Judge Asker says:

"The obvious purpose of this suit was to cancel the deeds which were executed in pursuance of the proceedings in the Probate Court, and to remove from plaintiff's title the cloud cast thereon by the deeds of any other claim of appellant to the land. These proceedings in the Probate Court and every order and decree relating to the land in controversy are specifically set out in the petition, and it is averred of each and all of them that they are fraudulent and void. These proceedings constitute a part of appellant's claim and eventuated in the deeds, against both of which relief is directly sought by this suit. We think the suit is not collateral, but a direct proceeding to vacate the deeds, which may be done if the facts alleged be true, although the orders in probate stand."

The rule stated by our decisions is in harmony with the rule generally followed by the American courts. Mr. Freeman in his work on Judgments states:

"With the possible exception of probate of wills, a court of equity may in the exercise of its general equitable jurisdiction grant relief from the probate orders and decrees upon the same grounds and conditions as from the judgments of other courts. Equity may compel restoration of lands or property fraudulently acquired in probate proceedings. The fact that the probate court is accorded exclusive jurisdiction in the first instance does not, at least with respect to most of its orders, differentiate it from any other court possessing exclusive jurisdiction over matters entrusted to it. Nor is the general rule abrogated by statutes purporting to make decrees and orders of courts of probate conclusive, since they merely place the determinations of these courts on the same footing as the judgments of other courts without interfering with the power of equity in proper cases to give relief from them. Sometimes statutes specifically provide for equitable relief, as for mistakes in final settlement of accounts, but statutory authority is not necessary in such cases.

"The general rule has been applied to various orders and decrees, such as those appointing or discharging administrators,

or settling the accounts of personal representatives and guardians, orders approving claims, orders of sale, orders setting apart a homestead, and decrees of distribution.

"But in all these cases equity may be resorted to only upon a sufficient showing of some ground for the exercise of equitable jurisdiction such as mistake or extrinsic fraud, and not merely to review the action of the probate court. 'The courts of chancery have no power to take such cases out of probate courts for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident and mistake, or impending irremediable mischief is universal, extending over suitors in all of the courts.' The fraud which will justify equitable relief against probate orders or judgments must, of course, be extrinsic." Freeman on Judgments (5th ed.), vol. 3, sec. 1184.

On the whole, we are of the opinion that the allegations made in the petition are sufficient to state a cause of action against the defendants in error, and to show that the property passed into the hands of the defendants in error in trust for the beneficiaries under the will of Annie S. Johnston. We do not think the authorities cited on the subject of collateral attack have any application to this litigation. This is not an attack on the decrees of the probate court. It is a direct attack on the conveyances under which the defendants in error claim title, and asking in effect that, because of the fraudulent conduct charged against W. H. Stephens as administrator, the property be held to be the property of the heirs or legatees under the will of Annie S. Johnston, and that it be partitioned, etc.

■■ We have heretofore noted that W. C. J. Stephens, a son of his co-defendants W. H. Stephens and Annie S. J. Stephens, claims a part of the property involved. His title, of course, necessarily presents a justiciable question in any litigation by which plaintiffs could hope to establish their title, and he would be a necessary party. The probate court was without jurisdiction to determine the title of W. C. J. Stephens, or to cancel any deed under which he claims. It is obvious, then, that the probate court did not have jurisdiction to determine the rights of the parties to this litigation. It is elementary that under such a state of facts jurisdiction is in the district court. Nor can it be of any consequence that the probate action may still be pending, since the administrator (if the administration is

still pending) is a party to his suit under charges of malfeasance and fraud brought against him.

In the case of Fisher v. Wood, supra, the Court was unable to determine whether or not the probate proceedings were still pending, although one of the parties, McDade, plead to the jurisdiction of the district court on the ground that the administration was still pending. (65 Texas, 202). Notwithstanding this state of the record, this Court, as well as the trial court, entertained jurisdiction. However, there is nothing in the petition to indicate that this case is still pending in the probate court, nor is any plea in abatement for that reason found in the pleadings of the parties.

Since the case was disposed of on general demurrer alone, issue of estoppel, limitation, res adjudicata, and kindred and related questions, if any there are involved in the litigation, do not arise, and we express no opinion with reference thereto.

The judgments of the District Court and Court of Civil Appeals are reversed, and the cause remanded.