## LOVELACE et al. v. OVERTON.

### No. 11088.

Court of Civil Appeals of Texas. Galveston.
Jan. 16, 1941.

See, also, Tex.Civ.App., 142 S.W.2d 731.

Lawrence Lipper and E. R. Campbell, both of Houston, for plaintiffs in error.

W. B. Lewis, of Houston, for defendant in error.

GRAVES, Justice.

This appeal, by writ of error, is from a judgment of the Tenth District Court of Galveston County, in ultimate purport and effect determining: (1) That the title and right of possession to a certain 10 acres of land, more or less, out of the W. K. Wilson League in Galveston County, Texas, which formed the subject matter of this controversy between the parties hereto, lay —as between them—in the defendant in error, T. V. Overton, as against plaintiffs in error, Claribel Lee Bays Mitchell Lovelace, and husband, Chas. D. Lovelace; (2) that no controverted issues of fact for a jury remained therein; (3) that a prior judgment in the same court in cause No. 42,530 between plaintiffs in error and defendant in error's predecessor in title was res adjudicata of such title in favor of this defendant in error, Overton; (4) that plaintiffs in error's claim thereto should be removed as a cloud upon the title to the land in the defendant in error, Overton; and (5) that, by specific description thereof, a recovery of the 10 acres should be decreed to him.

The record is long, the pleadings and procedural reaches labyrinthian, but the correctness of the judgment may be said to depend, it is thought, upon whether or not inhering prejudice is pointed out in any of these three assignments by the plaintiffs in error:

"(1) That the District Court erred in sustaining Overton's general demurrer to cross-defendants' pleadings in cross-action seeking the title to the lands involved, upon the ground that such cross-action was a collateral attack upon a prior judgment for foreclosure against the same party, of the same property, in the same court, because this was a suit in equity to recover the same property from the Trustee who was holding same in Constructive Trust.

"(2) That the District Court erred in refusing to dismiss plaintiffs' original suit, in its entirety, because the motion for non-suit was timely filed and submitted, and that there were not filed by the defendant, up to that time, any pleadings for affirmative relief, as would entitle defendant thereafter to maintain any prayers for affirmative relief to quiet his title.

"(3) That the District Court erred in awarding its judgment in behalf of the original defendant, because the original plaintiffs had timely deposited and requested that such case be docketed as a jury case, and the same was so docketed. That in the rendition of the court's judgment (there having been in such case many disputed issues of fact), the Court did not impanel a jury or submit it such disputed issues, but rendered judgment in behalf of the

original defendant, as cross-plaintiff, without requiring such cross-plaintiff to offer or submit any evidence and without the impanelment of or the aid of a jury."

As these quoted presentments indicate, the trial court arrived at its final determination by sustaining demurrers in Overton's cross-action to Mrs. Lovelace's suit against him for the property, which she calls "a suit to recover the title and possession, through a constructive trust, to said lands, thereby bestowing jurisdiction of said suit in said district court in Galveston County", thereby holding it to be an unmaintainable collateral attack upon such prior judgment in No. 42,530, at the same time holding Overton's cross-action to quiet his title to be sufficient basis for such affirmative relief to him, and, in consequence of these two determinations, further holding the resulting case as so developed to be without jury issues left.

Without undertaking to recapitulate them, the defendant in error defends the judgment so rendered in his favor, in substance, upon these considerations:

"That he purchased two notes; one for $300.00, and one for $325.00, secured by a deed of trust on the 10 acres, all executed by Mrs. Lovelace and dated April 9, 1925, and paid cash therefor, after the title had been approved by his attorneys, Bryan, Dyess, Colgin and Suhr; he denied under oath that O. L. Hubbard, W. O. Daily, or T. H. Mmims, were ever his agents; that, on the 14th day of August, 1926, he transferred the notes and mortgage to J. L. McShan; and that, on the 8th of February, 1926, Mr. McShan filed suit thereon against Mrs. Lovelace in the 10th District Court of Galveston, in cause No. 42,530, and recovered a judgment on the 21st day of February, 1927, ordering the property sold for a foreclosure of such deed of trust lien; that, on May 3, 1927, the sheriff, by foreclosure, deeded the property to McShan; that, on the 27th day of May, 1927, McShan deeded the property to this defendant-in-error, Overton, and he has had absolute peaceable, and adverse possession of the property since the 27th day of May, 1927, until the filing of this suit—more than ten years; further, that, under the facts alleged, there is no constructive trust on the land inuring to the benefit of plaintiff-in-error, Mrs. Lovelace, but there is res judicata and judicial estoppel, and limitations against her thereon, and the record title in his favor against her remained

undisturbed for more than ten years; he also claims judicial estoppel, in that he placed himself in a worse position by having had an oil well drilled on the property, and, because of this fact, there is an equitable estoppel against the plaintiff-in-error.

"The court dismissed the cause of action of plaintiff-in-error, and retained for trial the defendant's petition to remove cloud from title. Upon the trial, the defendant-in-error urged special exceptions and general demurrers to plaintiff-in-error's petition; the court, after hearing the same, sustained the material ones, because there was no attempt to set aside the judgment in the McShan case, in cause pending, No. 42,530; such judgment had become final, and could not be attacked collaterally, the plaintiff-in-error admitting to the court that she did not intend to attack it directly, and, since there was nothing for either the court or the jury to find, as facts, which were already admitted, in the plaintiff's pleadings, the court correctly rendered a verdict and judgment in the case, removing such cloud from his title, because of res judicata, judicial, and equitable estoppel and the statutes of limitation."

The main if not the controlling question the appeal presents is whether or not the plaintiffs in error's suit was an unmaintainable collateral attack upon the prior judgment in cause No. 42,530, as the learned trial court in effect held in sustaining the general demurrer thereto, or whether it was, as they contend, a permissible action to recover the title and possession of the land through establishment of a constructive trust in their favor thereon in the hands of the defendant in error, arising from his alleged fraud in juggling the title and possession out of them, without first, by direct action, seeking to set aside the adverse judgment to themselves in such cause No. 42—530.

This court concludes that the trial court erred in so determining that removal of such pre-existing judgment by direct attack thereon was an indispensable prerequisite to the maintenance of this action; hence, that plaintiffs in error's quoted first assignment should be sustained; in other words, our authorities hold that, in such an instance as this, where a purchaser at a judicial sale is alleged to have acquired the property in fraud both of the court through which the proceedings were had and of the plaintiff himself, that it passed by constructive trust for the benefit of the

defrauded plaintiff, and that the doctrine of collateral attack does not apply, to the extent of requiring the judicial sale to be set aside as a preliminary to the establishment of the claimed trust; that a decree—obtained in those circumstances—is not legally inconsistent with the position taken by the plaintiff in the action, that is, that the defendant on the face of the record owns a legal title to the property, but having obtained the same by imposition upon both the court and himself, holds it in trust for him, the plaintiff; indeed, as this court reads them, our Texas authorities, with one voice, hold specifically that: "Where a purchaser at a judicial sale is alleged to have acquired the property in trust for the plaintiff, the doctrine of collateral attack does not apply so as to require that the decree of order of sale should be set aside as preliminary to establishing the trust alleged." See 25 Tex.Jur., 756–7; Johnston v. Stephens, 121 Tex. 374, 49 S. W.2d 431; McCampbell v. Durst, 73 Tex. 410, 11 S.W. 380; Fisher v. Wood, 65 Tex. 199; Storer v. Lane, 1 Tex.Civ.App. 250, 20 S.W. 852; 42 Tex.Jur. 771; Kreis v. Kreis, Tex.Civ.App., 57 S.W.2d 1107, error dismissed; Nuckols v. Stanger, Tex. Civ.App., 153 S.W. 931, error dismissed; Miller v. Carlton, 2 Tex.Civ.App. 382, 21 S. W. 605; Tuck v. Patterson, Tex.Civ.App., 60 S.W.2d 328.

■■ This being the applicable rule of law, it seems also plain that the pleadings of these plaintiffs in error, when given the benefit of all reasonable intendments as against the general demurrer, did state a good cause of action for a constructive trust in themselves, the material substance thereof being as follows:

"I. That on March 1, 1925, the plaintiff, Claribel Lee Bays Mitchell Lovelace, was the wife of S. Robert Bays, (Sometimes known as Robert Bays and S. R. Bays) but there was then pending in Freestone County, Texas, a divorce suit by said plaintiff against the said S. Robert Bays, and judgment of divorce, dissolving the bonds of matrimony between said plaintiff and said S. Robert Bays, was entered on or about the 7th day of April, 1925.

"II. That on or about the 1st day of March, 1925, O. L. Hubbard, T. H. Mims and W. Owen Dailey were the agents and representatives of the defendant herein, and he and they were negotiating with the plaintiff, Claribel Lee Bays, to sell to her the land hereinafter described. That on or about March 26, 1925, the land hereinafter described was sold and conveyed by Mattie P. Pettit, individually and as independent executrix of the estate of C. C. Pettit, deceased, to O. L. Hubbard, by deed of said date. That the said Hubbard was the trustee, agent and representative of the defendant, holding said title for the use and benefit of the defendant herein, and the said Overton owned the title to said land or had some interest therein.

"That by reason of the negotiations for the sale of said land to this plaintiff, on or about March 26, 1925, or very shortly thereafter, this plaintiff purchased said land and there was executed and delivered a deed describing and conveying the same by O. L. Hubbard to this plaintiff, for the cash and whole consideration of Six Hundred and Twenty-five ($625.00) Dollars, which was paid by this plaintiff to the said O. L. Hubbard, T. H. Mims, W. Owen Dailey and said defendant; said deed being in the nature of a general warranty, with no lien reserved therein securing the payment of any unpaid portion of the purchase price, whereby this plaintiff became the owner in fee simple of the property and premises described therein, and which will hereinafter be described.

"III. That several days after the execution and delivery of said deed, the said defendant and his agents and representatives hereinabove named, communicated with this plaintiff, and advised her that the deed which had been executed and delivered to her would constitute said property as community property between herself and her husband, Bays, and that to eliminate said community interest therein in her said husband, Bays, that the property should be re-conveyed by her to the said Hubbard and that there would be executed and delivered by the said Hubbard another deed, conveying said property by general warranty deed, which should and would be post-dated, so that the same would appear to have been executed after the date upon which she expected and advised them she would obtain a judgment of divorce against her said then husband, on or about April 7, 1925, so that the record title would be transferred to her as her own separate property. That as a result of such communication and information, she appeared in the office of the said W. Owen Dailey, a practicing attorney of the City of Houston, and there he presented to her for execution certain written documents, which,

as explained and represented by him to her, were necessary in order to have her reconvey the title to said property to the said Hubbard, to protect her title, pending her divorce suit, and procuring the judgment of divorce against her then husband, in connection with the execution and delivery of a new deed from the said Hubbard conveying said property to her by a post-dated deed. That plaintiff believed and relied upon said statements and representations, and the truth and correctness thereof, and relying upon the honesty and integrity of said parties, executed said instruments or documents which she believed to have been necessary for the protection of her interest and title in said land, and the reconveying by defendant and his agents and representatives of said property by said post-dated deed in order not to cloud her title to the land and premises, she being an inexperienced woman in business and legal matters; and in connection therewith there was executed and delivered to her by defendant and his aforesaid agents and representatives a new deed from O. L. Hubbard conveying said property; said deed having been dated as of April 8, 1925, but as a matter of fact said deed and papers were executed and delivered a week or two prior to said date of April 8, 1925, and prior to the entry of the judgment in the divorce suit then pending, dissolving the bonds of matrimony between her and her said husband, Bays. That relying upon the statements and representations made to her by said parties, she did not read said papers which she executed, but delivered to them the first deed which she had received, signed by said Hubbard, and accepted, and received from them the second post-dated deed above referred to. That there was no further consideration for said transaction other than the consideration which she had theretofore paid to said parties.

"IV. That some time later this plaintiff was informed that the papers which she executed and delivered to and in the office of said W. Owen Dailey were not in the nature of a reconveyance from her to the said Hubbard, covering said land, but was in fact a deed of trust from her to the said Dailey as trustee for the use and benefit of the defendant herein, conveying the land hereinabove described and securing the payment of two notes which she was informed she had executed of even date with said deed of trust payable to the order of the defendant herein, aggregating $625.00, the first note being in the sum of Three Hundred ($300.00) Dollars due six months after date, and the second note in the sum of Three Hundred and Twenty-five ($325.00) Dollars due twelve months after date, and when she learned the nature of said papers, she protested to the defendant and his agents and his representatives, hereinabove named, and stated to them that she had never borrowed any money from said defendant and was not obligated to pay the amount of said notes, and had no knowledge that she had executed such deed of trust and notes, and demanded that said deed of trust lien be released and that said notes be cancelled and discharged. Thereupon, the defendant and his said agents and representatives admitted that she was not obligated to pay to the said defendant the amount provided for in said notes, and that they would release said mortgage lien, and cancel and destroy said notes. This plaintiff relied upon the declarations, statements and promises made by said parties, and assumed that said alleged lien had been released, and that said notes had been destroyed.

"This plaintiff says that all of said papers were executed and delivered at the same time, and were all filed for record with the county clerk of Galveston County.

"V. That on or about, and some time during the year 1933, said plaintiff met the defendant, and he stated to her that she had not paid the taxes upon said land since she had acquired the same, and that the land had been sold under foreclosure for the collection of delinquent taxes due and unpaid thereon, and that she had no further interest in the land, and that he knew nothing further about the property. That this plaintiff accepted and relied upon the statements and representations made to her by the defendant, and made no further inquiry or reference thereto until sometime later, as hereinafter alleged.

"VI. That about the 1st day of February, 1938, the plaintiff having become married to Charles D. Lovelace, learned that the defendant was claiming that he owned said land. That said land being at that time in close proximity to the Dickinson oil field, situated in Galveston County, Texas, she made investigation as to the title to the land, and from the records of Galveston County, discovered the following facts:

"a. That on or about the 14th day of August, 1926, the defendant transferred and

assigned to J. L. McShan of Harris County, Texas, said two notes hereinabove referred to, dated April 9, 1925, payable to this defendant, together with the alleged mortgage lien hereinabove referred to, to secure the payment of said notes.

"b. That on or about the 8th day of September, 1926, there was caused to be filed in the name of J. L. McShan, in the District Court of Galveston County, Texas, for the 10th Judicial District, cause No. 42,530, against the plaintiff herein, in the name of Claribel Lee Mitchell and her husband, Clyde Mitchell, praying for a judgment on said notes, and for a foreclosure of said alleged deed of trust lien on said land; in which suit this plaintiff or her then husband were not personally served with citation, but such citation against the defendants in that suit were only served by publication.

"c. That in said cause, on or about the 21st day of February, 1927, there was entered by the court, in behalf of the plaintiff, a judgment by default against said defendants, for the amount of the principal, interest and attorney's fees provided for in said two notes, and the foreclosure of said mortgage lien upon said property; and, thereafter order of sale was issued therein by the clerk of said court on March 31, 1927, and under said order of sale, said land was levied upon and sold by the sheriff on May 3, 1927. At such sale, said property was bought in in the name of the said J. L. McShan for the sum of $300.00, which, after the deduction of the court costs, was credited upon said judgment, and a sheriff's deed was executed and delivered to and in the name of the said J. L. McShan, conveying said property, which said deed was filed for record with the County Clerk of Galveston County, and is recorded in Volume 399, page 551, of the Deed Records of said County.

"d. That there was executed and delivered a deed from J. L. McShan to the defendant, T. V. Overton, dated May 27, 1927, conveying said property for a consideration of $10.00 and other valuable considerations, and recorded in Volume 399, page 594, of the Deed Records of said County.

"VII. This plaintiff says that until her investigation and becoming informed of the matters shown in the above paragraph No. VI, she did not have knowledge or notice that the defendant had not released said mortgage lien and that he had not cancelled said two notes, and that said notes and lien had been transferred and assigned to the said McShan, and that suit had been brought against her and her husband seeking to recover judgment on said notes and for the foreclosure of said lien, and that judgment had been entered therein, and that sale had been made of said land thereunder to the said McShan, and that the said McShan had conveyed said property to the defendant.

"This plaintiff alleges that the action of the defendant and his said agents and representatives in preparing, accepting, procuring, receiving and holding said notes and deed of trust, and the failure of the defendant to carry out the promise to this plaintiff to release said lien and cancel out said notes, and in assigning said notes and said lien securing the same to the said McShan, and in procuring the bringing of said suit to obtain judgment against this plaintiff, and to foreclose said deed of trust mortgage lien, and in obtaining judgment thereon without personal service to this plaintiff, but only citing her by publication, and in procuring the judgment therein, and of having the land sold and conveyed under said judgment to the said McShan, and in procuring the conveyance of said land from the said McShan to the defendant, and in making the representations and statements by him to this plaintiff that she had lost title to said land through tax foreclosure suit and sale, were fraudulent and false statements and representations, and were done in collusion with the defendant and his agents and representatives hereinabove referred to and named, and were all done for the purpose of defrauding said plaintiff, not only of the purchase price of $625.00, which she had paid to him and them as the purchase price for said land, but also defrauding said plaintiff of her legal title to said land and premises, and by reason of said frauds, deceits, false statements, and misrepresentations, defendant became unlawfully and fraudulently the legal owner of the record title to said land and premises, unjustly enriching himself, thereby, and to the detriment and damages to plaintiff.

"That as a result of the foregoing transactions, this plaintiff, having paid for and thereby having become legally and equitably entitled to the fee simple title to said land and premises, unencumbered, and by reason of the intentional and deliberate frauds perpetrated upon her, as aforesaid, by the defendant and his said agents and representatives, whereby the record title thereto became vested in the defendant, T. V. Over-

ton, who has since such time asserted to own such land and premises and has demanded and received all of the income and rentals therefrom; and because thereof, since that time, the defendant has held the title to said property as the constructive trustee for the use and benefit of said plaintiff."

The conclusion stated is not undermined, it is thought, by any of the quoted considerations upon which the defendant in error relies; obviously, as against the legal effect of the sustaining of the general demurrer, opposing averments of fact are ineffective, since this court must not only take as true all the well-pleaded averments of the plaintiffs in error, but, in addition, indulge all reasonable intendments in further support thereof.

Under this holding a reversal must in any event follow; it is accordingly deemed unnecessary to dispose of the other matters presented in the briefs, as they will probably not again arise—that is, if there were errors, on this trial, either in not dismissing the whole suit, despite the defendant in error's cross-action, or in not submitting the issues therein raised to the arbitrament of a jury —they may be obviated upon a new trial.

The appealed-from judgment will be reversed, and the cause remanded.

Reversed and remanded.