H. W. BERRYMAN ET AL. V. ALEXANDER BIDDLE ET AL.

*Decided January 24, 1908.*

</div>

1.—Estates—Probate Law of 1836—Sale of Land—Presumption.

While the probate law of December 20, 1836, provided for special terms of the probate court for the transaction of certain business, there was no statutory requirement that the order for such term should be entered in the minutes of the court, and in a collateral attack upon an administrator's sale of land ordered sold at a special term of a probate court in 1841 it will be presumed that the preliminary statutory requirements were complied with, in the absence of affirmative evidence to the contrary.

2.—Estates—Administrator's Sale in 1841—Terms—Description—Confirmation.

The probate law in force in 1841 did not require an express confirmation by the court of an administrator's sale. An order requiring the administrator to sell on terms prescribed by law, was sufficiently definite and certain, since the law required sales to be made on twelve months credit. The description of the land sold as the "N. E. league" of a block of four leagues, was sufficient.

3.—Same—Administrator as Trustee for Creditor.

By order of the probate court certain notes for the purchase money of lands of the estate sold by the administrator were distributed among the creditors in payment of their claims; when one of the notes fell due, the purchaser at administrator's sale conveyed the land to the administrator

in his individual capacity as the agent of the creditors in part satisfaction of the note; the administrator afterwards, in discharge of his agency, conveyed the land to the creditor to whom the note had been distributed. Held, the conveyance to the administrator did not vest the estate with the title to the land, and to have been legitimate and unobjectionable.

**4.—Trespass—Descent—Evidence.**

In a suit for the value of timber cut from land, the issue being whether or not defendant had an interest in the land by descent from a former owner, evidence considered, and held insufficient to sustain such claim.

**5.—Implied Partition—Cotenant—Acquiescence.**

Where a cotenant sells by metes and bounds a part of the tract jointly owned by herself and others, such part being less than her interest, it constitutes a partition of the land to that extent which is binding upon her and may be acquiesced in by her cotenants, and in the absence of evidence to the contrary, acquiescence will be presumed after the lapse of many years.

**6.—Interveners—Verdict—Practice.**

Where, in a suit of trespass to try title, the jury, under instructions from the court, return a general verdict for plaintiff, it is sufficient to support a judgment against an intervener as well as against the defendant.

Appeal from the District Court of Cherokee County. Tried below before Hon. James I. Perkins.

*Guinn, Norman & Guinn,* for appellants.

*M. B. Sevier,* for intervener.—The order of the sale being a general order, and there being no confirmation of said sale, and the order of the sale not describing the land, and the deed made to Sterne by Starr not being based on the proper order, report and confirmation by the court, it was not admissible in evidence until these requirements had been shown. Brown v. Christie, 27 Texas, 74; Collins v. Ball, Hutchins & Co., 82 Texas, 266; Graham v. Hawkins, 38 Texas, 628; Peters v. Caton, 6 Texas, 557.

Where party to the cause is not disposed of by the verdict of the jury there is no basis for a judgment disposing of such party. Sillmann v. Gano, 90 Texas, 645; Jackson v. State, 31 Texas Crim. App., 553.

*Word & Charlton,* for appellees.

REESE, ASSOCIATE JUSTICE.—This is a suit by Alexander Biddle et al. against H. M. Berryman and others to recover the value of timber cut and carried away by defendants from a certain league of land claimed to be the property of plaintiffs. Mary B. Sevier and her husband intervened, setting up title to the land and prayed judgment therefor against both plaintiffs and defendants.

The one hundred pine trees cut are alleged to be of the value of $200, and in their manufactured state $2,200, and the oak trees cut of the value of $180 standing, and $1,100 manufactured into staves. Plaintiffs seek to recover the value in the manufactured state.

The case was tried with a jury. The court instructed a verdict

for plaintiffs for the land and submitted to them the issue as to the good faith of Berryman in cutting the timber, the value of which had been settled by agreement. Upon the answer of the jury that Berryman acted in good faith, judgment was rendered for plaintiffs for the land and for $100, the value of the pine trees, and $180, the value of the oak trees, it having been agreed that that was their value standing on the land. From the judgment defendants and interveners appeal.

The land off of which the timber was cut was the N. E. league of a tract of four leagues, surveyed in a solid body, granted to Helena Kimble by the Government of Coahuila and Texas in 1828. On August 2, 1838, Helena Kimble, then the wife of William Nelson, joined by her husband, in consideration of love and affection, conveyed to her daughter, Mary Sydor, the league in question.

Mary Sydor, in turn, conveyed it, September 8, 1838, to K. H. Douglass. Appellees claim title under deed by the administrator of K. H. Douglass made in 1841. The validity of this conveyance to pass the title of the estate and heirs of Douglass, and of the probate proceedings under which the sale was made to authorize the sale and conveyance, are attacked by appellants, the interveners claiming title in Mrs. Sevier as heir of Douglass.

Helena Kimble, the original grantee, was the widow of James (otherwise Santiago) Dill, who first made application for a grant of the land in controversy in 1802. It is contended by appellants, Berryman and others, defendants, that the land was community property of Santiago Dill and his wife, Helena Kimble, and that defendant, H. W. Berryman, who cut the timber and sold it to the other defendants, as one of the heirs of said Dill, owned an interest in the land and as such owner had a right to cut the timber. The court found, as matter of law, that the title to the land was in appellees, but submitted to the jury the issue of his good faith in cutting the timber, based upon H. W. Berryman's *bona fide* belief that he owned an interest in the land, in order to determine whether appellees should recover the value of the timber in its manufactured state or only its value as it stood on the land when cut.

The first, second, third and fourth assignments of error assail the action of the trial court in admitting in evidence the orders of the Probate Court of Nacogdoches County in the matter of the estate of Kelsey H. Douglass, made in 1840 and 1841. It is objected, first, that the order appointing Starr administrator was void on the ground that it was made at a special term, and that there is no evidence in the records, or minutes of the court, showing that public notice was given of the holding of such special term, or that these proceedings would be had thereat.

The law in force at the time was the Act of December 20, 1836 (Sayles' Early Laws, art. 263), section 25 of which provided that special terms of the Probate Court might be held by the Chief Justice for the transaction of any business within their jurisdiction, provided ten days notice is given by advertisement at three of the most public places in different parts of the county, of the time of holding of said court, and of all business to be acted on at said

special term. It was shown by appellees that neither among the papers on file of the administration, which appeared to be intact and complete, nor in the minutes of the court, could any evidence be found that this notice was given. It will be noticed that the statute does not require that any order be made with regard to the holding of such special term, but only that the advertisement be made "at three of the most public places in different parts of the county." In a collateral attack, such as this was, against the validity of the proceedings of the Probate Court, it will be presumed that the proper notice by advertisement was given as prescribed by law. (Guilford v. Love, 49 Texas, 715; Moody v. Butler, 63 Texas, 210; Heath v. Garrett, 50 Texas, 268; Fitch v. Boyer, 51 Texas, 344; Johnson v. Wilcox, 53 Texas, 421; Weems v. Masterson, 80 Texas, 45.) The mere absence of evidence of the notice in the minutes, or among the papers, would not overcome this presumption.

Appellants also attack the sale by the administrator on the ground that the order of sale does not prescribe the terms of sale, but simply orders the administrator to sell on such terms as the law provides, while the law provides that sale shall be made either for cash or credit. Appellants are in error as to the law existing at that date. Section 29 of the probate Act of February 5, 1840 ( 1 Sayles' Early Laws, art. 736), does provide that sale shall be ordered to be made for cash or on credit, as shall be most advantageous to the estate, or as the nature of the claims against the estate may require. By a supplemental Act, however, passed February 5, 1841 (1 Sayles' Early Laws, art. 954), the law was changed and all sales were required to be made on a credit of twelve months. The order of sale in the present case was made in October, 1841, and the sale November 2, 1841, on twelve months credit. The order of the Probate Court directing the administrator to sell on terms prescribed by law was certain and definite. The order was to sell all of the property of the estate. In selling and conveying the land in question, it was described as the N. E. league of the four leagues granted to Helena Kimble, which was a sufficient description. The law in force at the time of these proceedings did not require a confirmation of the sale by the Probate Court. (Williams v. Cessna, 95 S. W. Rep., 1109; Act of 1836, 1 Sayles Early Laws, *supra.*) The sale was, however, reported to the court and, under orders of the court, the proceeds of the sale were distributed to the creditors and the account of the administrator embracing these matters was approved. If confirmation were necessary this would be sufficient to show approval by the court of the sale as against a collateral attack postponed for over sixty years, it clearly appearing that the estate received, under the proper order of the court, the proceeds of the sale. (Corley v. Anderson, 5 Texas Civ. App., 219.)

None of the assignments of error attacking the proceedings of the Probate Court are tenable.

It appears that the land sold for $2,000 on a credit of twelve months, the administrator taking the note of the purchaser with lien on the land and personal security; that by some arrangement among the creditors, with the approval of the Probate Court, this note,

with others of like kind, was distributed among the creditors in payment of their debts; that this particular note fell to certain creditors; that the note falling due, the land was by the vendee conveyed to Starr, in his individual capacity, as the agent of said creditors in part satisfaction of the note. Starr, holding the title in his individual capacity as agent of said creditors, afterwards, in discharge of his agency, conveyed the land to E. P. Levy, who represented Hart Labatt & Co., to whom the note had been distributed under the arrangement aforesaid. It is contended by interveners, appellants, that the effect of the conveyance to Starr was to revest the title, legal and equitable, in the estate of Douglass, of which Starr was administrator. The contention can not be sustained. The conveyance was not to Starr as administrator of the estate of Douglass, but to him in his individual capacity, merely as trustee for the creditors. This was a perfectly fair and legitimate arrangement. The administrator having properly sold the land so as to *completely divest the title of the estate,* and the proceeds having been received by the estate and applied to the payment of its debts, the estate was not affected in any interest it could possibly claim, by the deed to Starr for the benefit of the creditors holding the note. These proceedings and conveyances vested the title of the estate in E. P. Levy, under whom appellees have a complete title to the land.

It is, however, insisted by the defendants, who appeal, that H. W. Berryman is the owner of an undivided interest in the land, and as such entitled to cut the timber. Berryman claims that the land was community property of Dill and wife, and that he is an heir of Dill, and that the deed of Helena Kimble to Mary Sydor conveyed only her undivided one-half of the league. The facts with regard to the grant as shown by the record are as follows:

In 1826 or 1827 Elena (or Helena) Kimble, styling herself the widow of Santiago Dill, presented to the Political Chief of the Department of Texas her application for a grant of land. In the application she states: "That at the close of December, Eighteen Hundred and two, her late husband appeared before Don Miguel Musquez, who was then in command of this place, to obtain a grant of the tract of land mentioned in his said application, as is evidenced by the certified copy, duly attached hereto, in consequence of which, the said commandant ordered that her said husband be put in possession, and although it was not done, the tract of land was possessed by the applicant. In Eighteen hundred and eight the same party interested claimed his right, through the channel of Senor Viana, military commandant of the same place, as appears in the above mentioned copy, by the report made by that commanding officer to the Governor of what was formerly known as the Province of Texas. In Eighteen hundred and nine, the same Governor called for a report of the officer who was then in command of the aforesaid place, and consequently the report which appears in the aforesaid copy was made with other certificates to the same object. However, the cry for independence was raised in eighteen hundred and ten, and the lawful act of possession did not take place. There-

fore, I pray that, taking into consideration any foregoing state-
ments and inasmuch as I own no' land where to keep my small
stock for the support of my family, that you be pleased to order
that I receive the tract of land to which reference has been made,
and which I have been occupying up to this date. Wherein I shall
receive justice for which I am applying."

Attached to the grant were certified copies of the papers referred
to showing as follows:

Santiago Dill made application in 1802 (the date in the record
"1832" is evidently a mistake) for four leagues of land on the
Angelina River, the application was, on January 3, 1803, referred
by Miguel de Musquez to the Procurador of the Province with in-
structions to put the party in possession "without detriment to a
third party." On April 18, 1808, an official whose title does not
appear wrote as follows to a person styled "His Lordship, the Gov-
ernor" (evidently Salcedo, Political Chief at San Antonio): "San-
tiago Dill, a resident of the place, presents the foregoing decree
concerning the lands granted to him by Liuctant Dan Miguel
Musquez, when he was in command of the post, possession of which
was not given to him nor did he apply for it, during that long
period of time, up to this day, in order that your Lordship may
act according to your pleasure, on my part I find no obstacle.
Nacogdoches, the 18th of April, 1808."

January, 1809, Salcedo made order "that the actual commanding
officer of Nacogdoches will make a new report with full details to
settle this business." On April 24, 1810, this officer reported that,
"In obedience to the foregoing decree he found the land claimed
is vacant" (attaching statements signed by adjoining land owners),
"that the applicant has no land besides that which he cultivates in
the village of Nacogdoches for his support and that of the six
persons who compose his family, and that he has more than eighty
head of cattle and nineteen horses, without any place for pasture."
The record does not disclose that any further action was taken in
this matter with regard to the application of Santiago Dill. The
application of Elena Kimble was referred to the proper officer
directing a survey and that she be put in possession of the land
previously occupied by her, that is, four leagues. The survey was
made and reported of four leagues on the Angelina River, and
the grant formally extended to "Elena Kimble, widow of Santiago
Dill," in 1828. She was required to pay the government fees, or
price of $30 a league, unless it had been previously paid. The land
applied for by Elena Kimble and granted to her appears to be the
same land embraced in the application of Santiago Dill in 1802.
The record does not show when Santiago Dill died. He appears to
have been alive in 1810, and Elena Kimble in her application in
1824 states that she is his widow. Whether the land granted be-
came the separate property of Elena Kimble or community of her-
self and Santiago Dill is a question as to which we are in some
doubt. In the view we take of the law, when applied to the facts
in the record, a decision of that question is not necessary as it can
not affect the decision of this case.

Assuming the land to be community, the title at the time of the grant vested one-half in Elena Kimble and one-half in the children of Dill surviving, if he left such children. If there were no children, Elena Kimble took the whole. The record is silent as to whether there were such children, either at the death of Dill or at the date of the grant. Outside of the recital in his application in 1802, that he desired the land for himself, his children and heirs, there is not a particle of evidence that he ever had any children. It is stated in the report made by the official in 1810 that his family consisted of six persons. Upon this seems to rest the statement in appellants' brief that Dill left surviving him four children. In 1838 Elena Kimble, then married to Nelson, made the deed to Mary Sydor, whom she styled *her* child. This does not even suggest that she was Dill's child any more than it does that she was Nelson's. It is not suggested by anything in the record that she is, or had been, married, and that Sydor is her husband's name. H. W. Berryman testified that Elena Kimble was the widow of Santiago Dill and that she was his grandmother. It does not at all follow from this that Santiago Dill was his grandfather. If so, why should he not have so stated? The name Elena Kimble suggests that she married a man named Kimble after the death of Dill. It is shown that as Elena Kimble she married Nelson, and was living with him as his wife in 1838. It is just as reasonable to conclude from the evidence of Berryman that Elena Kimble was his grandmother, that his ancestor was her child by some other marriage either before or after the death of Dill. Berryman testified further that he "claimed the land as an heir of Dill," and that he cut the timber "because it belonged to him as an heir of James Dill." If this can be taken as a specific statement that he is an heir of James Dill, it was no more than a statement of a legal conclusion. He may have the idea that his being the grandson of Elena Kimble constituted him an heir of James Dill. We do not think that there is any evidence to show that H. W. Berryman was the grandson of Dill, or that Dill left any children surviving him. To hold that the evidence referred to, establishes or tends, in a legal way, to establish either fact, is to indulge in mere speculation as to facts which it appears, if true, could have been established by positive and direct evidence. Why could not H. W. Berryman have stated from family reputation, if in no other way, who his ancestor was, what was his or her name, and how related to James Dill?

But assuming that it is established that H. W. Berryman was the son of a child of James Dill, it is equally reasonable to assume that Mary Sydor, the daughter of Elena Kimble, was also such child, and as such entitled to one-fourth of the league in question in her own right, Elena and Berryman's ancestor owning an undivided interest of one-half and one-fourth thereof respectively; or assuming that Berryman's ancestor was the sole surviving child of James Dill and Elena Kimble, and assuming that the land was community property, in 1838, at the time of the deed to Mary Sydor, Elena Kimble would have owned one-half undivided and

Berryman's ancestor the other. The sale left three leagues out of which Berryman could get his share. There is no evidence in the record that suggests what has ever become of these other three leagues or as to their value relatively. As the four leagues were laid off in a solid body and practically in a square, it is a reasonable inference that it was all of about equal value. By conveying the league in question, Elena Kimble elected to take this as part of her share in the land. It was a partition which bound her and bound the other part owner, if enough was left for his full share and he acquiesced in or ratified such partition. (Jennings v. Borton, 44 Texas Civ. App., 280.

So far as the record shows, since 1838, when the deed to Mary Sydor was executed, and up to the cutting of the timber in question in 1904, no assertion or claim of ownership has ever been made by H. W. Berryman or anyone else as heir of James Dill. Berryman's claim to the land as heir of Dill appears from his own testimony to have been merely a mental process, of which no outward manifestation was ever made. Indeed, we find him in 1901 offering to lease 1000 or 2000 acres of the land from the representatives of appellees, with no suggestion of his present claim. So, looking at the matter from any standpoint, and even from the forced conclusions from the evidence attempted to be drawn by appellants, the deed to Mary Sydor conveyed good title to the land. Our conclusion, from the evidence, is that H. W. Berryman has shown no right whatever in any event.

The court did not err in instructing the jury that the title to the land was in appellees. It was then not necessary to submit the issue to the jury as to interveners' title. There was no issue to submit, upon the evidence, nor was there any necessity to require the jury to find upon this issue as contended by interveners in their ninth and tenth assignments of error. The judgment rendered for appellees for the land was proper upon the court's finding, as matter of law and so instructing the jury, that they had title. The fact that the jury was not required to render a formal verdict for appellees and against interveners for the land, is a matter of no importance if the court's finding on this point was correct, and we conclude that it was.

None of the assignments presents error, and they are severally overruled, and the judgment affirmed.

*Affirmed.*