## DILBECK et al. v. BLACKWELL et al.

### No. 5203.

Court of Civil Appeals of Texas. Texarkana.

March 1, 1939.

Rehearing Denied March 23, 1939.

Wheeler & Kenyon, of Gainesville, Ga., Frank C. Bolton, of Henderson, Austin F. Anderson, of Fort Worth, Mann, Irion & Mann of Dallas, and Howell Brooke and H. G. Vandiviere, both of Canton, Ga., for appellants.

Brachfield & Wolfe, Hill & Bath, and Futch & Strong, all of Henderson, Abney & Caven, of Marshall, F. W. Fischer, of Tyler, Robt. F. Higgins, of Houston, and Lasseter, Simpson, Spruiell & Lowry, of Tyler, for appellees.

JOHNSON, Chief Justice.

This suit was filed by Rebecca Dilbeck and more than 350 others residing in the states of Alabama, Arkansas, Georgia, Illinois, Kansas, Louisiana, Missouri, New Mexico, New York, North Carolina, South Carolina, Oklahoma, Oregon, Tennessee, and Texas. Plaintiffs are lineal descendants of Jediah Blackwell, deceased, and comprise most of his heirs, but do not include any of the heirs of his sons Jasper

L. Blackwell and James Wesley Blackwell, or his daughter Eliza Thompson. The suit is against A. D. Blackwell and Odell Blackwell, son and grandson, respectively, of said Jasper L. Blackwell, and against a number of other defendants holding mineral conveyances under said A. D. and Odell Blackwell. Plaintiffs' petition seeks to engraft a constructive trust upon the legal title to 465 acres of land located in Rusk County, formerly a part of the estate of Jediah Blackwell, and now claimed by defendants, and to recover of defendants the land and the value of petroleum oil produced therefrom by defendants. The suit is based upon allegations of fraud, to the effect that defendants' predecessor in title, Jasper L. Blackwell, fraudulently and to the injury of the heirs and legatees acquired the land from the estate of Jediah Blackwell, deceased, while acting as executor of said estate, by means of procuring orders of the probate court authorizing and confirming sales purportedly made by the executor to Eliza Thompson and Richard Moore, who, it is contended, pretended to purchase for themselves but in fact purchased for the executor, Jasper L. Blackwell, and subsequently conveyed the property to him. The action is one authorized under the equity powers of the court, as distinguishable from the statutory action of trespass to try title, and is in addition to the legal remedy provided by R.C.S. Art. 3579. It is authorized as relief against extraneous fraud and is not in conflict with the rule against collateral attack upon the orders of the probate court involved. Johnston v. Stephens, 121 Tex. 374, 49 S. W.2d 431, and authorities there cited.

Defendants' answers contain general demurrer, special exceptions, plea of not guilty, the two, three, four, five, ten and twenty-five years statutes of limitation, a plea under the Dominion Statute (Vernon's Ann.Civ.St. Art. 5519a), laches, estoppel, res adjudicata, and specially denying notice, actual or constructive, of the claims asserted by plaintiffs, or of the alleged fraud; and in the alternative, pleas of improvement made in good faith.

The case was tried to a jury. The testimony and record evidence introduced on the trial consists of 2,381 pages, from which we make the following statement in substance of the facts material to an understanding and disposition of the case on appeal. Jediah Blackwell died April 17, 1874, in Rusk County, Texas, seized and possessed of certain personal property and 930 acres of land, of which the 465 acres here in question is a part. He disposed of his estate by will, in which he named one of his sons, Jasper L. Blackwell, executor. In May, 1874, the will was duly probated in Rusk County, and the executor qualified and filed his inventory and appraisement of the estate. The will devised 310 acres (not included in this lawsuit) to his wife, Nancy Blackwell, for life, and directed that the "remaining 620 acres (embracing the land here in controversy) shall be divided into two equal tracts of 310 acres by a line running from East to West so as to make it more saleable, and that it be sold in said tracts and the proceeds thereof go to my children or their heirs as heretofore directed." Accordingly the executor divided the 620 acres into two tracts of 310 acres each, and under proper orders of the probate court sold at separate sales each of the two tracts, for cash, and distributed the proceeds to the heirs and legatees as directed in the will. The North 310-acre tract was sold to Eliza Thompson at private sale for $2,000, confirmed at the December Term, 1875, deed dated January 26, 1876, recorded January 28, 1878. The South 310-acre tract was sold to Richard Moore, at public auction for $930, confirmed at the December Term, 1876, deed dated April 16, 1877, recorded February 8, 1878. The probate proceedings appear to be regular in all respects and recite the sales to have been fairly made. An old memorandum, or account book, in the handwriting of Jasper L. Blackwell, kept in connection with his transactions as executor, contained, among other entries, the following:

"Received of Eliza A. Thompson Two Thousand Dollars for 310 acres of land belonging to the estate of J. Blackwell. January 1st, 1876, .............. $2000.00

"Received of Richard Moore Nine Hundred and Thirty Dollars for 310 acres of land belonging to the estate of J. Blackwell. February the 1st, 1877, ........ $930.00."

The 310-acre tract conveyed to Eliza Thompson was rendered by her for taxes for the years 1876–77–78–79, and then by deed dated December 19, 1879, recorded January 9, 1880, she conveyed 155 acres, the West ½ thereof, to Jasper L. Blackwell, for a recited consideration of $1,000 cash (the East ½ retained by her is not in controversy here). The 310-acre tract conveyed to Richard Moore was by him

rendered for taxes for the year 1877, and then by deed dated December 28, 1877, recorded February 8, 1878, Richard Moore and wife, Delia Moore, conveyed said 310-acre tract to Jasper L. Blackwell for the recited consideration of $975 cash. The last above-mentioned two tracts only, that is, the 155 acres conveyed by Eliza Thompson to Jasper L. Blackwell and the 310 acres conveyed by Richard Moore and wife to Jasper L. Blackwell, are in controversy here. Continuously after execution of the deeds by Richard Moore and Eliza Thompson to him, Jasper L. Blackwell openly and notoriously held peaceable and adverse possession of said two tracts of land, occupying, using and enjoying same, claiming title thereto, and regularly rendering and paying taxes on the same until his death in 1903. Like possession of the land was held by his widow, Mattie Blackwell, and children until her death in 1907. Whereupon, in a partition of the estate of said Jasper L. Blackwell and wife, Mattie Blackwell, cause No. 5431 in the District Court of Rusk County, judgment was rendered January 7, 1907, wherein the land now in controversy was partitioned in specific tracts to the several heirs of the said Jasper L. Blackwell and wife, Mattie Blackwell, which partition decree recites the vesting of title in each of said heirs, naming them, to a specifically described parcel. A certified copy of said judgment with its accompanying plat further defining the boundaries of the several tracts into which the land had been divided, each designated by number and the name of the heir to whom it was awarded, was duly recorded in the Deed Records of Rusk County; and each heir, namely, Jesse Blackwell, Bonnie Blackwell, R. J. Blackwell, A. D. Blackwell, Dora Goforth, L. W. Blackwell, and Odell Blackwell, in person or through tenants went into possession of the particular tracts awarded to them respectively. A. D. Blackwell purchased the tracts awarded to R. J. Blackwell, Dora Goforth, Bonnie Blackwell, and L. W. Blackwell, by deeds dated July 27, 1907, February, 1909, November 13, 1911, November 30, 1912, filed for record July 27, 1907, March 5, 1931, December 14, 1911, March 5, 1931, respectively. The four tracts so acquired by A. D. Blackwell and the tract awarded to him in said partition, and the tract awarded to Odell Blackwell constitutes the land in controversy here. The remaining defendants hold leasehold and other mineral interests in the land under mesne conveyances from A. D. Blackwell and Odell Blackwell, bearing dates subsequent to June, 1930, but prior to the filing of this suit, and during which time such lessees had developed the property for oil and gas.

From and after the partition of the land in 1907, open and notorious adverse possession has continued in the heirs of Jasper L. Blackwell and wife, Mattie Blackwell, and those holding under them, regularly rendering and paying without delinquency the taxes due thereon, to the time of filing of this suit in 1935.

After his qualification in 1874, Jasper L. Blackwell continued to act as executor of the estate of Jediah Blackwell, filing annual and other reports of his action in the administration and distribution of the property as directed in the will until the filing of his final account in 1890 and was not discharged until final adjudication thereof in 1894. His final account was filed August 30, 1890, and was contested by some of the heirs in a suit to which all the heirs of Jediah Blackwell were made parties. In the contest complaint was made only with respect to the 310 acres of land devised for life to Nancy Blackwell. The case was appealed from the probate court to the district court, and to the court of civil appeals, in Blackwell v. Blackwell, 23 S.W. 31, and to the supreme court, Id., 86 Tex. 207, 24 S.W. 389, where it was reversed and remanded to the district court with instructions. On August 11, 1894, in compliance with the mandate of the supreme court the cause was tried de novo in the district court and final judgment rendered partitioning and distributing the estate among the heirs of Jediah Blackwell, which did not include any of the land sold to Eliza Thompson and Richard Moore. In that suit no complaint was made with respect to the executor's sales of the 620 acres to Eliza Thompson and Richard Moore. But, on the other hand, by stipulations made and entered in the record upon the trial of that cause it was admitted that the executor had sold said 620 acres "according to the terms of the will."

In the present suit at the conclusion of the evidence plaintiffs and defendants filed and presented their separate motions for instructed verdict, all of which were overruled by the court, to which each party duly excepted. The cause was thereupon submitted to the jury upon special issues, each of which was answered favorably to the

defendants. Plaintiffs duly filed and presented their motion for judgment notwithstanding the verdict of the jury, which was overruled by the court and to which plaintiffs duly excepted. Judgment was entered upon the verdict of the jury, that plaintiffs take nothing. From an order overruling their motion for new trial plaintiffs have appealed. The parties will be referred to as in the trial court, plaintiffs and defendants. .

The record is accompanied by well-prepared briefs on both sides. Stated in one question, the controlling issue presented in the appeal is: Did the trial court err in overruling plaintiffs' motions for instructed verdict and for judgment notwithstanding the verdict of the jury? Plaintiffs' contention is to the effect: (1) That the alleged purchase by the executor at, and the alleged fraud with respect to, the sales purportedly made by him to Eliza Thompson and Richard Moore, are conclusively presumed from the fact that his subsequent purchases from said Eliza Thompson and Richard Moore occurred prior to receiving his final discharge as such executor, therefore upon proof alone of the fact of the executor's subsequent purchase of the property it is contended plaintiffs were entitled to judgment. (2) That none of the defenses pleaded, and established in the facts, by defendants were effective in this case.

With reference to plaintiffs' first contention, the record contains no evidence warranting an inference that the executor purchased at, or that there was any fraud or unfairness in fact with respect to, the sales made by him to Eliza Thompson and Richard Moore, except insofar as may be presumed from the fact that he subsequently purchased the land from them, one and four years later, but before receiving his final discharge as executor. All other facts and circumstances in evidence tend to show that the executor's sales to Eliza Thompson and Richard Moore were bona fide and that his subsequent purchases from them were made in good faith. Among which facts and circumstances we here note the following: The entries by the executor in his account book that he had received of Eliza Thompson the $2,000 and from Richard Moore the $930 consideration for the land; his distribution of the money among the heirs; the lapse of four years between the date of his sale to Eliza Thompson and the date of his purchase from her, and approximately one year between the date of the sale to and the date of his purchase from Richard Moore; rendition for taxes by Eliza Thompson each of the four years she held title; rendition for taxes by Richard Moore the year he held title; placing of record by Jasper L. Blackwell the deeds evidencing his purchases from Eliza Thompson and Richard Moore; these deeds were of record at the time and in the same court house where the heirs filed and prosecuted over a period of four years their suit contesting Jasper L. Blackwell's final account as executor and protesting the validity of his .purchase of the 320 acres devised for life to Nancy Blackwell; Jasper L. Blackwell was during that time in open and adverse possession of the land now, involved; his sales of the land now questioned were not then complained of but were by stipulation entered in the record upon trial of that case admitted to have been made according to the terms 'of the will; more than fifty years passed during which time Jasper L. Blackwell and those claiming under him continued in open and notorious adverse possession of the land, appropriating its rents and revenues; plaintiffs' ancestors nor any of the other parties to the above-mentioned suit ever made any claim contrary to the admission made on trial of that case, nor did plaintiffs until shortly before the filing of this suit. The jury found that his sales and conveyances to, and his subsequent purchases from Eliza Thompson and Richard Moore, were not made by the executor for the purpose of defrauding the heirs of Jediah Blackwell of their interest in the land. No issue was submitted, and none requested by plaintiffs, inquiring as to whether the executor in fact purchased directly or indirectly, at the sale made by him as alleged.

There are decisions from other states to the effect that upon proof of the fact that the executor was also the purchaser, directly or indirectly, at sales made by him under orders of the court, even though no extraneous fraud or unfairness is in fact shown, equity will avoid the sale by impressing the property with a trust in favor of the beneficiaries of the estate. Crawford County Bank v. Bolton, 87 Ark. 142, 112 S.W. 398; 24 Cor.Jur. 633 Sec. 1590, and authorities there cited. Such decisions appear to make no distinctions between sales authorized and confirmed by judgments of the court and sales made by an' executor or other trustee not under judgments of the court authorizing and confirm-

ing same. In such cases where the sale is not required to be confirmed it is said: "The rule is founded on the danger of imposition and the presumption of the existence of fraud inaccessible to the eye of the court." Nabours v. McCord, 97 Tex. 526, 80 S.W. 595, 598. However, in all the cases we have found reported in this state, where courts of equity have impressed the property with a trust in favor of the beneficiaries of an estate, and thus avoided sales authorized and confirmed by judgments of the probate court, there appears to have been shown in addition to proof of the executor's purchase at the sale some extraneous fraud or unfairness with respect thereto invoking the exercise of equity jurisdiction. Johnston v. Stephens, supra, quotes from Freeman on Judgments (5 Ed.) Vol. 3, Sec. 1084, reading as follows [121 Tex. 374, 49 S.W.2d 436]: "But in all these cases equity may be resorted to only upon a sufficient showing of some ground for the exercise of equitable jurisdiction such as mistake or extrinsic fraud, and not merely to review the action of the probate court. 'The courts of chancery have no power to take such cases out of probate courts for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident and mistake, or impending irremediable mischief is universal, extending over suitors in all of the courts.' The fraud which will justify equitable relief against probate orders or judgments must, of course, be extrinsic."

■ A purchase by the executor at a sale made by him is by statute, Article 3579, rendered unlawful, and made voidable at the instance of those interested in the estate; and when the remedy provided by statute is pursued there is no question but that the sale may be avoided upon proof alone of the fact that the executor was also the purchaser directly or indirectly at such sale, without the necessity of showing any extrinsic fraud. But we have found no case deciding the precise question as to whether our district courts in the exercise of equity jurisdiction will, upon proof of the fact alone that the executor purchased at the sale, conclusively presume the existence of some secret extraneous fraud, and upon that predicate avoid the sale authorized and confirmed by judgment of the probate court. Nor is decision of the question necessary in this case, and we do not decide it, for the reason that the al-

leged purchases by the executor at the sale made in this case are not in point of fact proven, but predicated upon a presumption only, arising from proof of his subsequent purchase of the property. A subsequent purchase by the executor raises a strong inference or presumption of an indirect purchase at his previous sale, but we have found no case holding such presumption to be a conclusive one. The text, 24 Cor. Jur. 635 Sec. 1591, and authorities there cited, including Berryman v. McDonald, 49 Tex.Civ.App. 81, 107 S.W. 944; Berryman v. Biddle, 48 Tex.Civ.App. 624, 107 S.W. 922, are to the effect that such presumption is rebuttable. But plaintiff's contention in this case leads further, and to the question: Based alone upon the presumption of an indirect purchase arising from the executor's subsequent purchase, may the court construct a second presumption of some secret fraud, and declare each of the presumptions to be conclusive against opposing facts and circumstances warranting contrary conclusions, and upon that predicate avoid the sales consummated pursuant to judgments of the probate court, by impressing the property with a trust? We answer the question in the negative, and for that reason overrule plaintiffs' contention that the trial court erred in refusing to sustain their motions for a directed verdict and for judgment notwithstanding the verdict of the jury.

■ We are also of the opinion that the defenses of laches and the statute of ten years limitation, Vernon's Ann.Civ.St. art. 5510, are effective in this case. It is the contention of plaintiffs that neither laches nor limitation operated against their cause of action for the reason, it is contended, that defendants failed to show that actual notice of the executor's purchase and adverse claim to the property had been brought home to plaintiffs or their ancestors. With respect to the defense of laches plaintiffs pleaded as excuse for their long delay in filing suit, that they never knew or had any means of knowing of Jasper L. Blackwell's purchase and adverse claim to the land. Plaintiffs testified that they first learned of the facts about February, 1933. They did not plead nor did they prove that their ancestors under whom they claim were ignorant of the facts. It is contended that the burden was upon the defendants to prove actual notice to plaintiffs' ancestors. That contention, it appears, would place a premium on extended

delay; for the reason that difficulty in discharging such burden of proof on the part of defendant would increase with the passing of years and death of those by whom the defendant may have proven such actual notice. However, in decision of this case it may be assumed, which we do not affirm, that the burden was upon defendants to show actual notice to plaintiffs' ancestors of the purchase and adverse claim by Jasper L. Blackwell to the land, because the facts and circumstances in this case, which we have heretofore recited, are sufficient to raise the inference of actual notice on the part of plaintiffs and their ancestors. The jury found that "the parties (which included plaintiffs' ancestors) to the final partition, of the estate of Jediah Blackwell, deceased, in 1894, knew that Jasper L. Blackwell was in possession of and claiming the tract of land that had been conveyed to him by Eliza A. Thompson" and "the tract of land that had been conveyed to him by R. A. Moore." The jury further found that "the heirs of Jediah Blackwell knew that Jasper L. Blackwell, and those claiming under him, were claiming the land in controversy in this suit adversely to them, the Jediah Blackwell heirs."

What has been said with respect to the facts and circumstances being sufficient to show actual notice of Jasper L. Blackwell's purchase and adverse claim to the land is likewise applicable to the defendants' plea of ten years limitation. That plea is further fortified in the following particular circumstances: (1) The placing of record by Jasper L. Blackwell of the deeds to him from Eliza Thompson and Richard Moore followed by Jasper L. Blackwell's adverse occupancy and claim of title, open, notorious, exclusive, and inconsistent with the claim or title in any one other than himself, and the payment of taxes thereon, for a period of more than 25 years, and until his death. Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137. (2) The recording of the partition decree by the heirs of Jasper L. Blackwell and wife, Mattie Blackwell, showing partition of the land between said heirs to the exclusion of plaintiffs and all other persons, followed by open and notorious possession and the payment of taxes for an additional period of more than 25 years before the filing of this suit. Honea v. Arledge, 56 Tex.Civ.App. 296, 120 S.W. 508; Republic Production Co. v. Lee, Tex. Com.App., 121 S.W.2d 973.

We have examined each of the several propositions in appellants' brief and do not find that any of them presents reversible error.

The judgment is affirmed.